Hillsborough
No. 79-280

RONALD L. ELIAS AND DEAN C. SINISGALLI,
d/b/a LEATHER CARAVAN

v.

THEODORE DOBROWOLSKI
AND
SYLVIA LABOMBARD (Formerly Dobrowolski)

* * * * *

THEODORE DOBROWOLSKI

v.

RONALD L. ELIAS AND DEAN C. SINISGALLI

March 13, 1980

*Joseph Williams,* of Manchester, by brief for Ronald L. Elias and Dean C. Sinisgalli, d/b/a Leather Caravan, waived oral argument.

*Sheehan, Phinney, Bass & Green,* of Manchester (*Joseph F. Devan* orally), for Theodore Dobrowolski.

KING, J.   These are actions in assumpsit by Ronald L. Elias to recover damages for breach of warranty, and by Theodore Dobrowolski to recover damages for failure to pay obligations due Amherst Bank & Trust Company. The Master (*Charles T. Gallagher*, Esq.) recommended and the Superior Court (*Flynn*, J.) approved a verdict for Elias.

The cases involve a leather clothing store in Milford, New Hampshire, known as the Leather Caravan. To finance the store, Sylvia LaBombard (then Dobrowolski) and Theodore Dobrowolski procured a loan at the Amherst Bank & Trust Company and executed a promissory note and a security agreement upon the inventory. The note and security agreement were signed by LaBombard and Dobrowolski d/b/a Leather Caravan. The bank perfected the security interest and thereby held a valid security interest in the inventory.

Ronald Elias, LaBombard's brother, bought inventory from suppliers and was paid $4,000 from the proceeds of the bank loan. The Leather Caravan was not a success. LaBombard and Dobrowolski became embroiled in a divorce in February, 1974. Elias "took over" the store in May, 1974, in partnership with Dean Sinisgalli under terms which are disputed in these cases. The July, 1974, and August, 1974, payments on the bank loan were not made. On August 8, 1974, the bank repossessed Leather Caravan's inventory and attached real estate owned by LaBombard and Dobrowolski. When the bank was paid from the sale of the real estate, the bank released the inventory. The master found that Dobrowolski had given the inventory to LaBombard "who sold most of it and kept the rest," and also found that both Elias and the bank "were ignorant of each other's interest in the inventory until the repossession took place."

The first issue is whether the master correctly ruled that Theodore Dobrowolski is liable for breach of warranty of title. Dobrowolski argues that because the security interest at the Amherst Bank & Trust Company was properly recorded, Elias was given constructive notice and thereby is deemed to have "knowingly" taken the goods subject to the security interest. He contends, therefore, that the transfer of the goods subject to the security interest did not breach his warranty of title.

■■   RSA 382–A:2–312(1)(b), however, provides that a contract for the sale of goods contains a warranty by the seller that "the goods shall be delivered free from any security interest . . . of which the

buyer at the time of contracting has no knowledge." The "knowledge" referred to in this provision is "actual" knowledge as distinct from notice. RSA 382–A:2–312 Comment 2 (1961). Accordingly, although the security interest to the Amherst Bank & Trust Company was properly recorded and therefore gave constructive notice, if the buyer had no "actual" knowledge thereof, the seller breached his warranty that the goods were free from the security interest.

In the instant case, the master specifically found that Ronald Elias was unaware of the security interest of the Amherst Bank & Trust. Findings are not to be disturbed unless it clearly appears they were made without evidence to support them. *Thayer v. Thayer*, 119 N.H. 871, 409 A.2d 1326 (1979); *Wisutskie v. Malouin*, 88 N.H. 242, 243, 186 A. 769–70 (1936).

Elias testified that he had not known of the bank loan at the time of the sale and that the bill of sale mentions neither the bank nor its security interest. In addition, one payment to the bank was made after the transfer of the business to Elias and his partner by counsel who held funds which had been escrowed in the divorce case and who had made two previous payments to the bank for Dobrowolski and LaBombard. The master found that "[w]hile that attorney may have made the payment in ignorance or in error, it is plain that neither [LaBombard] nor [Dobrowolski] attached much importance to insuring that the payment was not made." Because there is sufficient evidence to support the master's findings of fact, we find that Elias did not knowingly accept the goods with a security interest and that Dobrowolski therefore breached his warranty of title under RSA 382–A:2–312(1)(b).

Dobrowolski argues that because he did not sign any bill of sale, he cannot be regarded as the seller and is therefore not in breach of title. He contends that a signed writing is necessary before a breach of warranty may be asserted against him. RSA 382–A:2–201(3)(c) specifically exempts from the signed writing requirement contracts "with respect to goods for which payment has been made and accepted or which have been received and accepted." It is clear from the record that in this case payment was made and accepted and goods were received and accepted. Accordingly, a signed writing was not required.

Dobrowolski argues that LaBombard had no authority to act on his behalf in selling the store. Elias testified that he had contacted

Dobrowolski about the sale of the store and informed him that he (Elias) had "made up [his] mind to take over the business." In addition, Dobrowolski's claim that Elias and his partner agreed to assume the loan at the Amherst Bank & Trust Company when they took over the store disputes his own claim that he had no knowledge of the sale. We find ample evidence on the record that Dobrowolski did join in the sale to Elias. We affirm the court's ruling that Dobrowolski was in breach of warranty of title.

The second issue is whether Theodore Dobrowolski is entitled to restitution from Elias and Sinisgalli of all amounts paid by him to the Amherst Bank & Trust in discharge of the indebtedness. Dobrowolski argues that he is entitled to restitution because Elias and Sinisgalli had assumed the bank loan which Dobrowolski subsequently paid. Because there is sufficient evidence to support the master's finding that Elias and his partner had not assumed the loan, and because Dobrowolski therefore paid Amherst Bank & Trust in discharge of his own obligation instead of Elias', the claim for restitution must fail. *See* 66 AM. JUR. 2d, RESTITUTION AND IMPLIED CONTRACTS § 91 (1973).

*Exceptions overruled.*

DOUGLAS, J., did not sit; the others concurred.